# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION – BAY CITY

IN THE MATTER OF:

**INSPIRED CONCEPTS, LLC,**          Case No. 20-20034

         Chapter 11

         **Debtor.**          Hon. Daniel Opperman

## SECOND INTERIM ORDER: AUTHORIZING (A) DEBTOR'S USE OF CASH COLLATERAL; (B) ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 105, 361 AND 363; AND (C) PRELIMINARY AND FINAL HEARINGS PURSUANT TO F. R. BANKR. P. 4001[1]

This matter having come before the Court upon the Debtor's *First Day Motion for Entry of Interim and Final Orders Authorizing (A) Debtor's Use of Cash Collateral; (B) Adequate Protection Pursuant to 11 U.S.C. §§ 105, 361 and 363; and (C)Preliminary and Final Hearings Pursuant to F.R. Bankr. P. 4001* ("Cash Collateral Motion") filed January 10, 2020 [Doc. 5]; the initial hearing on the motion having been held by the Court on January 14, 2020 ("Interim Hearing"); due and appropriate notice of the Cash Collateral Motion and the Interim Hearing having been served by the Debtor in accordance with F. R. Bankr. P. 4001(c) on: (i) Fifth Third Bank, National Association ("Fifth Third Bank"), (ii) Mercantile Bank, (iii) the Office of the U.S. States Trustee, (iv) the holders of the largest 20 unsecured claims against the Debtor, and (v) all parties who have requested notice or filed appearances in this case as of the date of the Cash Collateral Motion ("Notice Parties"); the Court having entered the *Interim Order: Authorizing (A) Debtor's Use of Cash Collateral; (B) Adequate Protection Pursuant to 11 U.S.C. §§ 105, 361 and 363; and (C)Preliminary and Final Hearings Pursuant to F.R. Bankr. P. 4001* [Doc. 28] (the "First

---

[1]     Capitalized terms not otherwise defined in this Order have the same meaning ascribed to them in the Cash Collateral Motion.

1

Interim Order"); the Debtor, the Official Committee of Unsecured Creditors (the "Committee"), and the Secured Creditors (collectively the "Stipulation Parties") having stipulated to entry (the "Stipulation") of this *Second Interim Order: Authorizing (A) Debtor's Use of Cash Collateral; (B) Adequate Protection Pursuant to 11 U.S.C. §§ 105, 361 and 363; and (C)Preliminary and Final Hearings Pursuant to F.R. Bankr. P. 4001* (the "Second Interim Order"); the Court having reviewed the Stipulation, and finding good and sufficient causes appearing therefor:

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

1. The Court has jurisdiction over this proceeding and the parties affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The Notice of this Cash Collateral Motion and the relief requested thereby constitutes due and sufficient notice under the circumstances and complies with F.R. Bankr. P. 4001(c) and Local Bankruptcy Rule 4001-2 (E.D.M.).

3. Sufficient causes exist for immediate entry of this Second Interim Order as permitted by F.R. Bankr. P. 4001(b)(2) and (c)(2).

4. The Committee has been formed and has informally objected to the continued use of cash collateral, which informal objection has been resolved with the Stipulation, by which the Stipulation Parties agree to entry of this Second Interim Order.

5. No other party appearing in the case has filed or made an objection to the Cash Collateral Motion or the entry of this Second Interim Order, or if any objections have been filed or made, such objections are overruled by the entry of this Second Interim Order.

6. The Debtor acknowledges the prepetition liens of Fifth Third and Mercantile Bank

2

(the "Prepetition Liens") are (a) valid, binding, perfected, duly recorded, and enforceable liens on, and security interests in, all of Debtor's right, title, and interest in, and to, the collateral described in the Prepetition Liens, and (b) not subject to, pursuant to the Bankruptcy Code or other applicable law, avoidance, disallowance, reduction, recharacterization, recovery, subordination (whether equitable, contractual, or otherwise), attachment, offset, recoupment, counterclaim, defense, "claim" (as defined in the Bankruptcy Code), impairment, or any other challenge of any kind by any person or entity. Debtor releases and waives, for itself and its estate, any right to challenge or contest in any way the scope, extent, perfection, priority, validity, non-avoidability, or enforceability of the Prepetition Liens. The Prepetition Liens were granted by Debtor for fair consideration and reasonably equivalent value, and were granted in consideration of the making and/or continued making of loans, commitments, and/or other financial accommodations to Debtor.

7. The acknowledgements, representations, warranties, agreements, and findings made in paragraph 6 of this Second Interim Order and in paragraph 5 of the First Interim Order shall not be binding on the Committee. The Committee shall have through forty-five (45) days after Fifth Third Bank files its proof of claim in the above-captioned bankruptcy case to complete its review of, and file any objection to, the claim of and/or the extent of Fifth Third Bank's liens in any pre-petition collateral. The Committee shall have until the effective date of any plan of reorganization or liquidation to object to the claim of and/or the extent, validity, and perfection of Mercantile Bank's liens in any pre-petition collateral.

Based upon the foregoing, after due and deliberate consideration, and there appearing to be good and just cause therefore,

**IT IS ORDERED:**

8. <u>Motion Granted.</u> The use of cash collateral is granted on an interim basis. If no objections are filed by the date set forth in paragraph 27 of this Second Interim Order, this Second Interim Order shall be continued on an interim basis through the budgeted period as provided in the budget filed with this Court ("Cash Collateral Period") at docket no. 27 (the "Budget"), unless otherwise ordered by the Court. The Debtor shall file a replacement budget no less than fourteen (14) days before the expiration of the Budget. If no objections to the replacement budget have been filed at least seven (7) days before the expiration of the Budget, then the replacement budget shall become the "Second Interim Budget" and this Second Interim Order and the Cash Collateral Period shall be further extended for an additional 120 day period and as provided in the Second Interim Budget, without further Court order, pursuant to the consent of the Stipulation Parties.

9. <u>Authorization to Use Cash Collateral.</u> The Debtor is authorized to use Cash Collateral under the terms set forth in this Second Interim Order retroactive to the Petition Date in order to avoid immediate and irreparable harm. Without the written approval of the Secured Creditors and the Committee or the approval of this Court, Cash Collateral shall only be used for: (i) working capital; (ii) other general corporate purposes of the Debtor; (iii) the satisfaction of the costs and expenses of administering the Chapter 11 Case, including, without limitation, payment of any prepetition obligations that are necessary to preserve the value of the Debtor's estates to the extent approved by the Court; and (iv) adequate protection payments required by this Order in paragraph 11 below, and for no other purpose.

10. <u>Budget Modifications.</u> The Budget or the Second Interim Budget, as the case may be, may be modified and amended by the Debtor at any time after this Second Interim Order becomes a final order, subject to the consent of the Secured Creditors and the Committee. The Debtor may file a subsequent motion for use of Cash Collateral if the

Stipulation Parties are unable to agree on a modified Budget. If any party files an objection to any modified Budget in a subsequent motion for use of cash collateral, the Debtor may continue to use Cash Collateral under the terms of this Order until the objection has been resolved. Any modified budgets shall be filed on the docket in the above-captioned case and shall, after a seven-day notice and objection period, become the applicable Budget for the succeeding budget period.

11. <u>Adequate Protection.</u> The Debtor is authorized and directed to pay Fifth Third Bank adequate protection in the amount of $2,500 per month, which shall be applied first toward interest. To the extent the adequate protection payment is greater than the interest due on the Fifth Third Indebtedness, the difference shall be applied to principal. To the extent the Fifth Third Indebtedness, if subsequently validated, is determined to be less than fully secured under § 506(b) of the Bankruptcy Code, the Debtor or Committee, as applicable, may seek to have some or all payments recharacterized as principal payments.

The Debtor is further authorized and directed to pay Mercantile Bank adequate protection in the amount of $700 per month, which shall be applied first toward interest. To the extent the adequate protection payment is greater than the interest due on the Mercantile Indebtedness, the difference shall be applied to principal. To the extent the Mercantile Indebtedness, if subsequently validated, is determined to be less than fully secured under § 506(b) of the Bankruptcy Code, the Debtor or Committee, as applicable, may seek to have some or all payments recharacterized as principal payments.

12. <u>Replacement Liens.</u> To the extent of any diminution in value of the pre-petition assets on account of the Debtor's use of such assets, the Secured Creditors are provided replacement liens upon and security interests in all of Debtor's post-petition assets pursuant to §§

361 and 363 of the Bankruptcy Code ("Replacement Liens"). The Replacement Liens shall have the same priority, scope, validity and enforceability, and shall attach to the same categories of assets as the pre-petition liens and security interests as of the Petition Date.

13. <u>Perfection of Replacement Liens.</u> This Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the collateral, or other act to validate or perfect such lien or security interest, including, without limitation, control agreements with any financial institutions holding a depository account consisting of collateral. Notwithstanding the foregoing, any Secured Creditor may choose, in its sole discretion, and for any reason, to file, record or otherwise perfect such liens or security interests as allowed by federal, state or local statute; however, such act of perfection shall not affect the priority, validity or enforceability of any lien or security interests granted by this Order.

14. <u>Payment of Expenses.</u> The Debtor shall be permitted to make payments to its legal counsel in an amount not to exceed $5,000 per month, to Committee counsel in an amount not to exceed $3,000 per month, and any other professional retained pursuant to § 327 or § 1102 of the Bankruptcy Code, which payments shall be held in escrow pending the approval of the Court, and otherwise subject to Paragraph 15 of this Order. The monthly payments to professionals shall be due on the last day of each month commencing with the month of February 2020. In addition to the forgoing, the Debtor shall pay a retainer of $5,000 to Committee counsel (the "Retainer") within fourteen (14) days after entry of this Second Interim Order. To the extent that the Debtor does not make any monthly payments to Debtor's or Committee's professionals as set forth in this Second Interim Order or any Budget related to the Second Interim Order, excluding the Retainer,

the amounts due the Debtor's or Committee's professionals shall be paid as a carve out of the Secured Creditors' collateral out of the first available proceeds otherwise payable to either of the Secured Creditors. The payment of professional fees pursuant to this paragraph, as well as the payment of the quarterly fees required pursuant to 28 U.S.C. §1930, shall not be included in any default calculation pursuant to Paragraph 19(c), hereunder.

15. <u>Use of Cash upon Default.</u> Upon the occurrence of an Event of Default (as defined in Paragraph 19, below), which default is not cured within seven (7) days after written notice, which specifies the default in detail, is filed by a Secured Creditor on the docket in the above-captioned case, the Debtor may, absent the entry of a subsequent order of the Court to the contrary, continue using Cash Collateral only for a period of thirty (30) days ("Default Period"), and only for the following purposes ("Default Expenditures"):

   a. payment of statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6);

   b. payment of fees and costs to the Clerk of the Court;

   c. payment of ordinary course administrative costs and expenses necessary and reasonable during the Default Period; and

   d. payment of the unpaid, reasonable fees and expenses of any professionals retained by the Debtor pursuant to § 327 and the Committee pursuant to § 1102 of the Bankruptcy Code that have become due under the Budget or that have accrued from and after the Petition Date, through the 30 day Default Period, or such longer period as may be ordered by the Court,. Any payments made pursuant to this subparagraph (d) shall be subject to the final approval of the Court pursuant to §§ 330 and 331 of the Bankruptcy Code.

Except as otherwise provided herein, upon the failure of the Debtor to cure such specified default within seven (7) days after the Default Notice is filed on the docket, the Secured Creditors shall have the rights and remedies provided herein and otherwise in applicable law to the extent not inconsistent with this Order. Notwithstanding anything to the contrary herein, the Debtor may

file a motion to use cash collateral on an expedited basis.

16. <u>Reporting.</u> The Debtor shall, upon the request of any Secured Creditor or the Committee, provide the Secured Creditors and the Committee with (a) as soon as practicable, but not later than fourteen (14) days after the end of any month, (i) monthly cash flow statements in a form reasonably acceptable to the Secured Creditors and Committee, provided on an aggregate and restaurant-by-restaurant basis, commencing with the March 2020 reporting period, and (ii) budget-to-actuals, reflecting the Debtor's actual operating results to the Budget or the Second Interim Budget, as applicable; (b) copies of monthly operating reports filed and provided to the U.S. Trustee; and (c) within 14 days after entry of this Second Interim Order, copies of all policies of insurance in force and effect and any renewals thereof. Debtor also shall otherwise timely abide by all reporting requirements established by the U.S. Trustee, as well as provide to Secured Creditors and the Committee such other reasonable financial and/or operational documents prepared by the Debtor in the ordinary course of business, and upon sufficient and adequate notice.

17. **Confidentiality**. To the extent any financial, operational, or any other document or written or verbal communication, all responsive to an information request of the Committee ("Confidential Communication") is given, made or provided to the Committee, any member or representative of the Committee, or any professional retained by the Committee (collectively, the "Committee Member"), each Committee Member agrees to hold such Confidential Communication in strict confidence, only to be shared and discussed solely among the Committee Members, and used solely for official Committee purposes. Additionally, to the extent certain Confidential Communications may be deemed highly sensitive by the Debtor, the Debtor may request Committee legal counsel to keep such information restricted only for review

by Committee counsel, and not to be shared with any other Committee Member ("Restricted Access"). If such request is denied, the Debtor may seek authority from the Court to provide such highly sensitive Confidential Communications only on such Restricted Access basis. All such documents and communications shall be marked "Confidential" or "Restricted Access"; and absent such notation shall not be deemed Confidential Communications or Restricted Access. Notwithstanding the foregoing, Committee counsel may share summaries of Confidential Communications and Restricted Access information with his Committee Members, and otherwise utilize Confidential Communications as exhibits to pleadings in a contested matter or adversary proceeding. This paragraph shall not apply to any document, information or disclosure that is in the public domain, or otherwise acquired by any Committee Member through non-Debtor parties.

18. **Access to Books and Records**. The Committee has submitted document production requests to the Debtor by letter dated February 4, 2020 ("Document Requests"). The Debtor shall produce and deliver, on a rolling basis, responses to such Document Requests by March 13, 2020. Thereafter, upon reasonable request and prior notice of not less than seven (7) days, the Debtor shall provide solely to Committee counsel, reasonable access to Debtor's financial books, records, and files, whether such information is stored on any computer or disk ("Access Right"). Such Access Right shall be allowed on Saturdays only, unless otherwise agreed by the Debtor, and shall not last more than 8 hours on any given date, to, among other things, verify cash receipts, collateral levels, and results of operations, and subject to the Confidentiality provisions of Paragraph 17, above.

19. Events of Default. The following shall be deemed Events of Default hereunder:

   a. the conversion of this case to a case under chapter 7, or the appointment of a chapter 11 trustee;

b. the entry of an order granting relief from the automatic stay with respect to any Secured Creditor that will materially interfere with the Debtor's business operations or materially reduce the value of the collateral securing the liens and security interests granted by this Order;

c. the Debtor's (i) revenues fail to meet, or its ordinary course operating expenditures exceed, the amounts set forth in the Budget by more than 20%; or (ii) operations show on-going, sustained losses in the aggregate amount of $40,000, and which materially hinder the Debtor's ability to operate, as determined by Order of this Court;

d. the Debtor's failure to maintain in full force and effect any policy of insurance necessary, appropriate, or required by applicable law or agreement; and

e. the Debtor fails to make payments as required under this Order, which payments are not cured within seven days from the date of written notice of non- payment.

20. <u>Relief from Stay.</u> The automatic stay provisions of § 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified and vacated without further notice, application or order of the Court, but only to the extent necessary to permit the Secured Creditors to perform any act authorized or permitted under or by virtue of this Second Interim Order. Additionally, and with without limiting the foregoing, upon the occurrence of an uncured Event of Default, the Secured Creditors shall be entitled to seek relief from the automatic stay to take any action and exercise all rights and remedies provided to them by this Second Interim Order and applicable law to, without limitation, proceed against the collateral securing their pre- and post-petition claims. The Debtor and the Committee reserve and preserve all rights to object to any request of any of the Secured Creditors for relief from any stay under § 362 or § 105 of the Bankruptcy Code or otherwise.

21. <u>Disposition of Collateral.</u> The Debtors shall not sell, transfer, convey, lease, encumber or otherwise dispose of any material asset outside the ordinary course of business

10
20-20034-dob    Doc 69    Filed 03/18/20    Entered 03/18/20 11:15:26    Page 10 of 13

without an order of the Court.

22. <u>Reservation of Rights.</u> The terms, conditions and provisions of this Second Interim Order are in addition to and without prejudice to the rights of the Secured Creditors and/or the Committee, as the case may be, to pursue any and all rights and remedies not otherwise inconsistent with the terms of this Second Interim Order under the Bankruptcy Code or any other applicable law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any subsequent request for use of Cash Collateral or granting of any interest in Debtor's assets or priority in favor of any other party, to object to any sale of assets, and to object to application for allowance and/or payment of fees and expenses of professionals or other parties seeking compensation or reimbursement from the Debtors' estate. This Second Interim Order is without prejudice to the Debtor's rights to request Court authorization, after notice and a hearing, to modify this Second Interim Order or to use Cash Collateral on terms other than those set forth in this Order.

23. <u>Binding Effect.</u> The provisions of this Second Interim Order and all rights, remedies, privileges and benefits in favor of Secured Creditors provided in this Second Interim Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Second Interim Order, shall continue in full force and effect, and shall survive entry of any such other order, including, without limitation, any subsequent order which may be entered confirming any plan of reorganization, converting the case to a case under chapter 7 of the Bankruptcy Code, or dismissing the case.

This Second Interim Order shall be binding upon the Debtor, all parties in interest in this chapter 11 case and their respective successors and assigns, including any subsequently appointed

trustee. This Second Interim Order shall inure to the benefit of the Secured Creditors and the Committee and their respective successors and assigns, and nothing in this Second Interim Order shall effect to establish, change or alter the priority among the Secured Creditors, or any other potential secured creditor, as it existed on the Petition Date, nor the priority or extent of any of the Replacement Liens granted by this Order.

24. <u>Marshalling.</u> In no event shall any of the Secured Creditors by subject to the equitable doctrine of "marshalling", or any similar doctrine, with respect to its collateral.

25. <u>Other Costs and Fees.</u> The Debtors shall pay quarterly fees to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a).

26. <u>Conversion.</u> If a Committee initiates an adversary proceeding, contested matter or other action, and this case later converts to a case under chapter 7, then the chapter 7 trustee shall succeed to the rights of the Committee to continue pursuit of such adversary proceeding, contested matter or other action.

27. <u>Objection Period</u>.

   a. Debtor shall serve the Stipulation and this Second Interim Order on all Notice Parties;

   b. the deadline to file an objection to this Second Interim Order shall be seven days from its entry; and

c. If an objection is timely filed, a final hearing on the Second Interim Order will held pursuant to LBR 4001-2 on Thursday, March 26, 2020 at 2:30 PM by telephone as set forth in the Practice Guidelines of Judge Opperman and the Notices of the Court.

**Signed on March 18, 2020**



/s/ Daniel S. Opperman
Daniel S. Opperman
United States Bankruptcy Judge